UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2022
```

---

MARTIN J. SAUER,

                Plaintiff,

   -against-

TOWN OF CORNWALL and TODD HAZARD,
Town of Cornwall Police Chief,

              Defendants.

---

No. 7:20-CV-04881 (NSR)

**OPINION AND ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Martin Sauer ("Plaintiff"), a 74-year-old partially blind veteran, commenced this civil action pursuant to 42 U.S.C. § 1983 ("Section 1983") on June 25, 2020, asserting five causes of action sounding in violation of his substantive due process rights, unlawful arrest and seizure, violation of equal protection, and unlaw deprivation of property rights. (ECF No. 1.) Plaintiff's claims are asserted under the United States Constitution, as well as the New York State Constitution, against Defendants Town of Cornwall ("Town") and Police Chief Todd Hazard ("Chief Hazard") (collectively, "Defendants"). Plaintiff's various claims arise from his arrest by Chief Hazard for purportedly peddling or giving away corn on the side of a road without a peddler's permit issued by the Town, even though Plaintiff had a New York State-issued peddler's license. (*See* Complaint ("Compl."), ECF No. 1.)

Specifically, Plaintiff asserts claims[1] for: violation of his Fourth and Fourteenth Amendments and State Article I, Section 12, regarding his right not to be arrested without probable cause and not to be unreasonably seized; violation of his Fourteenth Amendment and State Article

---

[1] Plaintiff withdrew his Substantive Due Process claim, the first cause of action in the complaint. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), ECF No. 38.)

I, Section 11, right to be guaranteed equal protection of the law(s); and violation of his right not to be deprived of property without due process of law as guaranteed by the Due Process Clauses of the United States and New York Constitutions. (Compl. ¶¶ 56–65.) Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 30.)

For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Factual Background

The following facts are derived from the Complaint or matters of which the Court may take judicial notice, are taken as true, and constructed in the light most favorable to Plaintiff for this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff is a partially blind 74-year-old veteran of the United States Armed Forces who sold sweet corn, along with other items, from a truck along the side of Route 32 in the Town of Cornwall for over twenty years (approximately between 1992 and 2018). (*See* Compl. ¶¶ 9–10.) Plaintiff sold his sweet corn pursuant to (1) a peddler's license issued by the State of New York in 1992 that conferred a lifetime right to veterans to peddle, vend, and sell goods or merchandise on the highways within a specific jurisdiction (the "State Peddler's License"), and (2) an annual peddler's license issued by the Town Clerk for the Town of Cornwall between 2011 and 2017 ("Town Peddler's License"). (*Id.* ¶¶ 11–15.)

In the Town of Cornwall, along Route 32, New York State created two pull-off lots for vehicular use which are both located on the right side of the highway as one travels from the Town of Cornwall to the Town of Woodbury. (*Id.* ¶ 12.) During the workweek, Monday through Friday,

customers of Short Line Bus, a private bus company, park in the first lot ("Lot 1"). (*Id.* ¶ 13.) Plaintiff has routinely used the second lot ("Lot 2") for the purpose of selling his sweet corn and produce, and on weekends he would also use the Short Line parking lot. (*Id.* ¶ 14.)

In 2018, the Town denied Plaintiff's applications for a Town peddler's license based, in part, upon Chief Hazard's assessment that the sale of sweet corn on the side of the road was a public nuisance, a danger to the community. (*Id.* ¶¶ 16–17.) After his license was denied, Plaintiff decided to "park his truck along Route 32 in the Town of Cornwall and give away his sweet corn and produce to customers who had been loyal to him for over twenty years" because he no longer had a market for his produce as a result of the Town's license denial. (*Id.* ¶¶ 18–21.) Prior to giving away his corn, Plaintiff placed signs along Route 32 indicating free sweet corn and produce, with the expectation that his customers would stop by and that he would give them free produce. (*Id.* ¶ 20.)

On July 21, 2018, while off-duty, Chief Hazard approached Plaintiff as he was giving away his corn and produce along Route 32. (*Id.* ¶ 21.) Plaintiff informed Chief Hazard that he was not selling produce but was giving it away pursuant to his New York State Peddler's License. (*Id.*) Despite this, Chief Hazard, with malice disregard, arrested Plaintiff for unlicensed peddling in violation of Town Code Section 111-4.[2] (*Id.* ¶¶ 22–23.) Chief Hazard arranged to have Plaintiff's vehicle towed which caused damage to it and Plaintiff incurred a $400 fee to recover the vehicle. (*Id.* ¶ 22.) At the time of his arrest, Plaintiff possessed a State Peddler's License, which exempted him from the requirements of Town Code Section 111-4 as provided in Town Code Section 111-

---

[2] Town Code Section 111-4 states: "It shall be unlawful for any person to conduct or operate a transient retail business, roadside farm market or food vending business or engage in hawking, peddling, or soliciting sales of any products to which this chapter applies with the town without first obtaining a license from the Town Clerk."

3(C).[3] (*Id.* ¶ 24.)

On September 12, 2018, on the motion of the Town, all the charges against Plaintiff were dismissed in the interest of justice, acknowledging Plaintiff's possession of a State Peddler's License. (*Id.* ¶ 45.) The dismissal of Plaintiff's charges affected a series of legal battle in state court. (*Id.* ¶¶ 25–55.) Plaintiff's counsel had previously notified the Town that it could not deny Plaintiff the right to sell produce along Route 32. (*Id.* ¶ 29.) In response to Plaintiff's counsel notification, on August 16, 2018, the Town commenced an action in New York State Supreme Court, Orange County, seeking to, in part, enjoin Plaintiff from selling produce along Route 32 on the theory that his conduct constituted a public nuisance. (*Id.* ¶ 30.) Also on August 16, 2018, Plaintiff filed a Notice of Claim against the Town alleging, *inter alia*, false arrest. (*Id.* ¶ 31.) On August 17, 2018, the Plaintiff and Town appeared before New York State Supreme Court Justice Elaine Slobod for the purpose of providing oral argument on the Town's application for a temporary restraining order ("TRO") seeking to enjoin Plaintiff for selling along Route 32. (*Id.*) At the hearing, the parties informed Justice Slobod that Short Line customers entered and exited Route 32 at the same location that Plaintiff utilized to sell, that Short Line dropped customers off at the same location, and that some Short Line buses dropped their customers off on the opposite side of Route 32, who then physically crossed the highway to access the parking lot. (*Id.* ¶ 35.) The Court inquired of the Town whether it had any intention to ask Short Line to abandon their parking lots on Route 32, to which the Town attorney responded in the negative. (*Id.* ¶¶ 35, 37.) Following oral argument, the Court denied the Town's application for a TRO. (*Id.*)

---

[3] Town Code Section 1l1-3(C) states: "The provisions of this chapter shall not apply to any person or persons engaged in the sale or solicitations of sales of any product or service for which the person or persons hold a valid license from the State of New York."

On October 17, 2018, the Cornwall Town Board enacted Local Law #4 of 2018, which required a local license for all vendors and eliminated the exemption for persons holding state licenses. (*Id.* ¶ 47.) The enactment, according to Town counsel, mooted the Town's equitable action against Plaintiff. (*Id.*) On November 8, 2018, the parties filed a Stipulation of Discontinuance in New York State Supreme Court, discontinuing all claims and counterclaims without prejudice, but it did not serve to withdraw the Notice of Claim filed by Plaintiff against the Town. (*Id.* ¶¶ 48–49.)

## II.    Procedural Background

On June 18, 2020, Plaintiff filed his Complaint against the Town and Chief Hazard. (ECF No. 1.) On November 12, 2020, Defendants filed a motion to dismiss Plaintiff's Complaint for failure of personal service and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), respectively. (ECF No. 16.) On September 7, 2021, the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) was granted solely on the grounds of improper service. (ECF No. 25.) Plaintiff was granted leave to serve properly, and the Complaint was not dismissed because the Court did not reach the merits of Defendants' dismissal arguments pursuant to Rule 12(b)(6). (*Id.*)

On October 15, 2021, Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 30.) Defendants submitted an affidavit in support of their motion (ECF No. 31), along with Exhibit A: Plaintiff's Complaint (ECF No. 31-1). On November 13, 2021, Plaintiff opposed the motion to dismiss (ECF No. 38). In support of his opposition, Plaintiff submitted (ECF No. 37), along with three Exhibits: Exhibit 1: Plaintiff's 1992 lifetime New York State veteran's peddlers license (issued through the Orange County Clerk's Office) (ECF No. 37-1); Exhibit 2: Plaintiffs' affidavit, sworn to September 5, 2018, submitted to

the Orange County Supreme Court (ECF No. 37-2); and Exhibit 3: Transcript of Plaintiff's Section 50-h hearing, conducted on March 21, 2019 (ECF No. 37-3).

On November 30, 2021, Defendants filed their reply papers. (ECF No. 41.) Defendants also submitted an affidavit in further support of their motion and in reply to Plaintiff's opposition. (ECF No. 40.) Defendants' affidavit was annexed to Exhibit B: Letter from Christopher Kleister of the Town of Cornwall Police Department dated August 7, 2018 (ECF No. 40-1); Exhibit C: Letter from the Town of Cornwall Police Department to Plaintiff dated October 5, 2017 (ECF No. 40-2); and Exhibit D: Letter from the New York State Department of Transportation to Plaintiff dated September 14, 2018 (ECF No. 40-3).

## STANDARD OF REVIEW

Under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks and citation omitted). However, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citations omitted).

## DISCUSSION

Plaintiff asserts claims against Defendants under Section 1983, alleging Fourth and Fourteenth Amendment violations of (1) arrest without probable cause; (2) unreasonable seizure; (3) equal protection; and (4) deprivation of property without due process. (Compl. ¶¶ 59, 61, 63, 65.) Plaintiff also asserts claims pursuant to the New York state constitution for similar alleged violations. (*Id.*)

Defendants move to dismiss all claims under Rule 12(b)(6) for failure to state a claim on the basis that the operative complaint contains no allegations to support a *Monell* claim against the Town, Chief Hazard is entitled to qualified immunity, and the Court lacks supplemental jurisdiction over Plaintiff's state law claims. (*See* Defendant's Memorandum of Law in Support of Dismissal ("Defs. Mot.") and Defendants' Reply Memorandum of Law in Support of Dismissal ("Defs. Re."), ECF Nos. 32, 41.) Moreover, Defendants argue that (1) the first and second causes of actions, presumptively false arrest and false imprisonment claims, must be dismissed because there was probable cause (or at minimum, arguable probable cause) for the arrest and that Chief Hazard was entitled to qualified immunity; (2) the third cause of action is construed to be a selective

enforcement claim; however, it is not adequately pled as the complaint does not allege Plaintiff was selectively adversely treated compared to others similarly situated; and (3) the fourth cause of action fails to plausibly allege a procedural due process claim based upon a property right in the issuance of the State Peddler's License. (*See* Defs. Mot. at 5–9.) The Court will address each claim below.

## I.    Section 1983 Claims

Plaintiff brings several claims pursuant to Section 1983 against Defendants. Section 1983 provides, in the relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). To state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)); *see also Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013).

### A. *Monell* Liability

Defendants contend that Plaintiff has failed to plausibly state any claim against the Town for municipality liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New* York, 436 U.S. 658 (1978), and its progeny. (Defs. Mot. at 11.) Municipalities may only be held liable under Section 1983 where

> [T]he action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such custom has not received formal approval through the government's official decision-making channels.

*Monell*, 436 U.S. at 659.

Courts in the Second Circuit apply a two-prong test for Section 1983 claims brought against a municipality. *See Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted). First, the plaintiff must "prove the existence of a municipal policy or custom to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To satisfy the first requirement, a plaintiff must prove the existence of (1) a formal policy that is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies that caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to

deliberate indifference to the rights of those with whom municipal employees will come into contact. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (collecting cases).

Upon a review of the allegations and assuming them to be true, the Court determines the allegations fail to support a plausible *Monell* claim against the Town. Of significance, the Complaint is void of any specific municipal "policy, custom, or widespread practice" as required under *Monell* that resulted in the conduct complained of by Plaintiff. *See, e.g.*, *Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770 (NSR), 2019 WL 4738941, at *11 (S.D.N.Y. 2019) (plaintiff must identify a "specific municipal policy or custom that caused his injuries or provide any allegations supporting a plausible inference of a pattern and practice through a failure to train or supervise.") (citing *Zachary v. City of Newburgh*, No. 13 CV 5737 VB, 2014 WL 1508705, at *5 (S.D.N.Y. 2014)). Plaintiff's primary allegations are that the Town denied him a peddler's license in 2018, that Chief Hazard wrote a letter to the Town stating that Plaintiff's presence along Route 32 was an unsafe condition, and that Chief Hazard arrested Plaintiff for giving away corn and produce despite Plaintiff possessing a valid state issued peddler's license. While Plaintiff's allegations appears to focus on the conduct of Chief Hazard, he does not allege that the Defendant Town had a "policy, custom, or widespread practice" of denying peddler's permits to other peddlers in the Town or any other "policy, custom, or widespread practice" that resulted in the denial Plaintiff's application for a Town license. Merely identifying a single instance of alleged misconduct is insufficient to establish a custom or policy by the municipality. *See Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).

Similarly, the Town's denial of Plaintiff's peddler's license application, coupled with the knowledge that Plaintiff had sold produce within the Town limits for over twenty years, his arrest, and the Town's purported selectively targeting of Plaintiff, which includes the Town's commencement of a legal action against him on the theory that he was a public nuisance, and the subsequent enactment of Local Law # 4 of 2018, which in essence repealed the exemption for those holding a New York State peddler's license, does not amount to a policy, custom or practice under *Monell. See Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (internal citations omitted) (A policy or "custom" can be demonstrated in a variety of ways including that an act was performed pursuant to a custom was formally approved by an appropriate decisionmaker but is so widespread as to have the force of law). To demonstrate the existence of a de facto policy or custom through a widespread practice, a plaintiff must allege that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively sanctioning or approving the conduct. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (*citing Sorlucco v. New York City Police Dept*., 971 F.2d 864, 870–71). Plaintiff's allegations are insufficient to plausibly allege an official Town policy or practice as defined under *Monell*. For all the reasons given, to the extent Plaintiff's complaint seeks to assert a *Monell* claim, such claims are deemed dismissed.

### B.  Claims Against Chief Hazard in his Official Capacity

Liberally interpreting the complaint, Plaintiff asserts claims against Chief Hazard in his official capacity. Suits against state officials in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). Generally, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, the

entity's policy or custom must have played a part in the violation of federal law." *Id.* at 25 (internal quotation marks omitted); *see also Brown v. City of Oneonta, New York*, 235 F.3d 769, 70 n.2 (2d Cir. 2000). Here, Plaintiff alleges all the acts of the Chief Hazard were done by him under his authority as Police Chief of the Town of Cornwall. (Compl. ¶ 5.) As previously discussed in the *Monell* liability section *supra*, since Plaintiff fails to plausibly allege or identify a broader policy or custom that caused, or even played a role, in the deprivation of his constitutional rights, such allegations must be dismissed.

### C. Fourth Amendment Violations

Plaintiff claims that he was unlawfully seized and detained in violation of his Fourth Amendment rights when he was falsely arrested without probable cause and subjected to unreasonable search and seizure. (Compl. ¶¶ 58–61.) Plaintiff asserts that such conduct amounts to false arrest and his subsequent detention, false imprisonment.[4] The Fourth Amendment protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When analyzing a claim under Section 1983 for false arrest and imprisonment, courts "generally looked to the law of the state in which the arrest occurred." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Plaintiff was arrested in the Town of Cornwall in the State of New York, so the Court will look to New York state law to analyze these claims.

"A false imprisonment claim under New York law is identical to a false arrest claim." *Rebenstorf v. City of N.Y.*, No. 15 Civ. 5784(BMC), 2015 WL 6438765, at *2 (E.D.N.Y. Oct. 21, 2015) (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). To state a claim under Section 1983

---

[4] Plaintiff's claims for false arrest and imprisonment are the second and third causes of action pled in the complaint.

for false arrest or false imprisonment, a plaintiff must allege that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). In other words, "[t]o establish a claim for false arrest under Section 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"The existence of probable cause to arrest constitutes [legal] justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (citation omitted); *see also Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."). Probable cause "requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). Probable cause may exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted).

Once an officer possesses facts sufficient to establish probable cause, he is "neither required nor allowed to sit as prosecutor, judge or jury"; rather, his "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989); *see also Panetta v. Crowley*, 460 F.3d at

395–96 (2d Cir. 2006) (citation omitted). "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quoting *Miroslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)). Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the Court as a matter of law. *Weyant,* 101 F.3d at 852.

Plaintiff's allegations support a finding that Chief Hazard intended to confine Plaintiff, that Plaintiff was conscious of his confinement, that Plaintiff did not consent, and that the confinement was not otherwise privilege. Though Defendants contend that Chief Hazard had probable cause to arrest, a review of the Complaint indicates otherwise. Plaintiff alleges that prior to his arrest he sold corn and produce in the Town for more than twenty years. An inference that it was common knowledge. While Plaintiff admits that sometime prior to his arrest he was denied a Town peddler's license, he also alleges that at the time of his arrest he possessed a valid state license. The state license provided him with the lifetime right to peddle, vend, and sell goods or merchandise on the highways. The Town Code, Section 111-4, exempted individuals with a state license, like Plaintiff, from the requirement of obtaining a Town license. It was only after Plaintiff's arrest that the Cornwall Town Board enacted Local Law #4 of 2018, which eliminated the state license exemption. Relevant to the Court's determination is Plaintiff's assertion that Chief Hazard was aware of his state peddler's license. Thus, it cannot be said that Chief Hazard, as the lead law enforcement officer of the Town of Cornwall, responsible for of enforcement of all Town ordinance, including the local peddler's license ordinance, having knowledge that Plaintiff possessed a state permit, which exempt him from obtaining a local license, had probable cause to

arrest.[5] Accordingly, the Court finds that Plaintiff has sufficiently pled alleged a Fourth Amendment violation for false arrest and imprisonment in his complaint as against Chief Hazard in his individual capacity.[6]

### D. Fourteenth Amendment Equal Protection Claim

In his complaint, Plaintiff seeks to assert an Equal Protection claim.[7] (Compl. ¶¶ 62, 63.) The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Brown*, 221 F.3d at 337 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

The Equal Protection Clause prohibits the selective enforcement or prosecution by a state official pursuant to a lawful regulation. *See LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980). The failure to prosecute other offenders for similar conduct is not a basis for a finding of denial of equal protection." *Id.* (citing *United States v. Rickenbacker*, 309 F.2d 462, 464 (1962)). To state a plausible equal protection claim based upon selective enforcement, a plaintiff must allege establish that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible

---

[5] Plaintiff attempts to draw a distinction between giving away the corn versus selling the corn. The Court, however, deems such distinction irrelevant.

[6] In paragraph 5 of the complaint, Plaintiff asserts that Chief Hazard is being sued in his official and individual capacity.

[7] Plaintiff's Equal Protection claim is the fourth cause of action asserted in the complaint.

considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir.1995) (internal citations omitted)

A review of the complaint, which is the operative document, reveals that Plaintiff's allegations are deficient. Plaintiff fails to allege that he was adversely treated compared to others similarly situated and does not plead discriminatory intent or impact. Though Plaintiff asserts that "[t]he Town . . . admitted in open Court that it was selectively targeting [Plaintiff] while permitting the same alleged traffic hazard to exist with Short Line customers entering and exiting the same parking lot" (Compl. ¶¶ 35–36, 38–39), such allegations do not constitute "similarly situated comparators." In a selective enforcement claim, a plaintiff must identify comparators whom a prudent person would think were roughly equivalent but is not required show an exact correlation between themselves and the comparators. *See AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016), *aff'd*, 692 F. App'x 78 (2d Cir. 2017) (citing *Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011). Plaintiff also fails to allege "selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Giordano v. City of New York*, 274 F.3d 740, 750–51 (2d Cir. 2001) (quoting *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)). Mere conclusory assertions are insufficient.

To the extent Plaintiff attempts to asserts a "class-of-one" claim under the Fourteenth Amendment, such claim also fails. (Pl. Opp. at 11.) In "class-of-one" equal protection claim, plaintiffs must show that: (1) no rational person could regard the circumstances of the plaintiff as differing from those of a comparator to a degree that would justify the differential treatment based

16

on a legitimate government policy, and (2) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted based on a mistake. *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). To establish a "class-of-one" equal protection claim, a plaintiff must show an "extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d at 159 (2d Cir. 2006)). In order to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake*." Rusto v. Town Bd. for Town of Skaneateles*, 610 F.3d at 59 (quoting *Clubside, Inc.*, 468 F.3d at 159).

Here, Plaintiff again does not allege treatment different than those "similarly situated" or even identify similarly situated individuals. Although the complaint alleges that Plaintiff was singled out, under a class-of-one theory a plaintiffs must allege an extremely high degree of similarity between themselves and the persons to whom they compare themselves. No such showing is alleged or made in the complaint. Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is granted and the claim is dismissed without prejudice.

### E.  Fourteenth Amendment Procedural Due Process Claim

In his complaint, Plaintiff attempts to assert a deprivation of property right(s) without due process.[8] The complaint, however, fails to specify whether such deprivation concerns the Town's denial of the peddler's license or the alleged unlawful taking of his vehicle following his arrest.

---

[8] Plaintiff's deprivation of property right claim is the fifth cause of action asserted.

To assert a due process claim, a plaintiff must allege he possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *See McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001) (internal citations omitted); *Colson v. New York Police Dep't*, No. 13-CV-5394 JG, 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015). The threshold issue is whether the plaintiff has a property interest in the alleged deprivation which is protected by the Constitution. *See Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 381(S.D.N.Y. 2014) (citing *Morales v. New York*, 22 F. Supp. 2d 256, 276 ( 2014)). Notably, a deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized, however, does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter. *See, e.g.*, *Zinermon v. Burch*, 494 U.S. 113, 130 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Here, Plaintiff allegations suggest that he possessed a property interests conferred by the Town's Peddler's license which he possessed from 2011 through 2017, which was later denied in 2018. Without determining whether Plaintiff in-fact had a property interest in the peddler's license, Plaintiff's allegations are insufficient. Plaintiff does not allege the absence of or any inadequacy in the process by which he could have challenged the denial of his peddler's license application. *See Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (dismissing procedural due process claim regarding impoundment of car where plaintiff "has not alleged the absence or inadequacy of any post-deprivation hearing following the impoundment") (quoting *Clynch v. Chapman*, 285 F. Supp. 2d 213, 223 (D. Conn. 2003)). As Defendants assert in support of their motion to dismiss, Plaintiff could have commenced a proceeding in state court, pursuant to New York C.P.L.R. Article 78, challenging the Town's denial. Similarly, to the extent Plaintiff asserts a due process claims in regards to the unlawful seizure of his vehicle or as it relates

to his state license, he fails to alleged the absence or inadequacy of any post-deprivation process. Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claim under the Fourteenth Amendment is granted and this claim is dismissed without prejudice.

## II.     Qualified Immunity

Defendants contend that Chief Hazard is entitled to qualified immunity. (Defs. Mot. at 12.) Qualified immunity is "a complete defense to false arrest claims." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012). The doctrine of qualified immunity shields government officials acting in their official capacity from suits for damages unless their actions violate clearly established rights of which an objectively reasonable official would have known. *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). To be clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

To be entitled to qualified immunity, an arresting officer need only have possessed "arguable" probable cause, not actual probable cause. *See Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001). Arguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Id.* (citing *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir.1997)).

The Court concludes that Chief Hazard is not entitled to qualified immunity.  It is well settled that an individual has a right to be free from unlawful seizure. U.S. Const., Fourth Amendment. As alleged in the complaint, Chief Hazard arrested Plaintiff despite being informed that Plaintiff possessed a state peddler's license. As previously discussed, Chief Hazard lacked

probable cause to arrest. Plaintiff was not required to obtain a local peddler's license because as an individual with a state license he was exempt. At the time of Plaintiff's arrest, Chief Hazard was the principal law enforcement officer, responsible for knowing and enforcing all local ordinance, including the local peddler's ordinance. Nor can it be said that Chief Hazard possessed arguable probable upon being informed that Plaintiff possessed a state peddler's permit.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff shall have until October 24, 2022, to file an Amended Complaint in accordance with this Opinion. If Plaintiff fails to timely file an Amended Complaint, those claims dismissed without prejudice shall be deemed dismissed with prejudice. Defendants shall file have until November 14, 2022, to file a responsive pleading.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 30.

Dated:   September 30, 2022                                SO ORDERED:
         White Plains, New York

                                                    _____
                                                       NELSON S. ROMÁN
                                                    United States District Judge